**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**SAPA PRECISION TUBING**
**ROCKLEDGE, LLC,**

      **Plaintiff,**

**v.**                                                     **Case No:   6:16-cv-22-Orl-31KRS**

**TEX-MEX RECYCLING, LLC,**

      **Defendant.**

**ORDER**

This matter comes before the Court without a hearing on the motion to dismiss (Doc. 7) filed by the Defendant, Tex-Mex Recycling, LLC ("Tex-Mex"); the response (Doc. 12) filed by the Plaintiff, Sapa Precision Tubing Rockledge, LLC ("Sapa"); and Tex-Mex's reply (Doc. 21).

**I**.     **Background.**

Sapa is a Delaware limited liability company with its principal place of business in Rockledge, Florida. Tex-Mex is an Ohio limited liability company with its principal place of business in Texas. Sapa delivers aluminum tubing to various businesses. (Doc. 12-1, at 2 ¶ 3). From 2010 to 2015, Sapa sold its leftover scrap aluminum to Tex-Mex for a fee determined by an agreed upon schedule for scrap values.[1] (Doc. 3, at 3). Tex-Mex's regular practice was to pick up the scrap aluminum from Sapa's processing plant in Reynosa, Mexico. (Doc. 13 ¶ 6). Tex-Mex would execute a bill of lading showing the amount of scrap aluminum it received. (*Id.*) Upon

---

[1] The fee schedule and other relevant information about the deal were purportedly contained in an agreement between the parties. However, neither of the parties has provided the Court with a copy of this agreement.

receipt of the scrap, Tex-Mex would send purchase orders to Sapa at its Florida office. (Doc. 3 ¶ 7; Doc. 13 ¶¶ 7, 10). Sapa would then invoice Tex-Mex. (Doc. 3 ¶ 7; Doc. 13 ¶¶ 7, 11). Tex-Mex would then send payment by electronic transfer. (Doc. 13 ¶ 9). With each payment, Tex-Mex would email bill payment stubs to Sapa's accounting department employees at Sapa's Florida office. The parties have submitted conflicting evidence as to where payments were required to be made and as to where the ACH transfers were actually delivered.[2] (*Compare* Doc. 13 ¶¶ 9-14 (indicating payments were made and required to be made in Florida), *with* Doc. 42-1 ¶¶ 11, 13 (indicating payments were neither made nor required to be made in Florida)).

At some point, Tex-Mex stopped paying for the scrap it was receiving. Several times between 2010 and 2015, in an attempt to collect the debt owed, Sapa officials Jeff Lehman, Tim Cordes, and Joe Sebbar met with the head of Tex-Mex, Andrew Hettinger, in Sapa's Rockledge, Florida office. (Doc. 13 ¶ 15; Doc. 14 ¶ 6.).[3] Sapa also sent a letter to Tex-Mex, dated October 26. 2015, demanding payment of a reduced amount in exchange for forgiveness of the entire debt. (Doc. 3, at 3). Tex-Mex did not pay, and Sapa now seeks the full amount it contends it is owed for the scrap delivered.

Sapa sets forth six claims against Tex-Mex: an action for goods sold; accounts stated; unjust enrichment; breach of contract; conversion; and open account. The witnesses in this case include a number of residents of Mexico, including current and former Tex-Mex employees and some Sapa

---

[2] On the invoices sent by Sapa to Tex-Mex, there was a Philadelphia, Pennsylvania address listed below the words "remit to." However, Tex-Mex never points to anything, past mere listing of the address on the invoice, which shows the parties agreed that payment was due in Pennsylvania.

[3] Mr. Hettinger avers that his purpose for traveling to Florida was to discuss other matters and that he did not anticipate a discussion of collection on old accounts. (Doc. 42-1 ¶ 20). However, it is clear that during the visits the parties discussed settling the debts at issue in this case. (Doc. 13 ¶¶ 15-18, 25(c); Doc. 14 ¶¶ 6-7, 13(b); Doc. 41-1, at 5 ¶ 7 and 27).

executives.[4]   (Doc. 7-1 ¶ 16).   In addition, there are numerous witnesses who reside in Florida who have knowledge of the formation of the parties' agreement, the process by which Tex-Mex paid Sapa, the history and terms of the parties' negotiations, and the attempts to resolve outstanding invoices.  These witnesses include Mr. Sebbar, Mr. Cordes, Mr. Lehman, Ms. Ostroff, Gianella Frank, and Mike Neville. (Doc. 13 ¶ 23; Doc. 14 ¶ 11).   The relevant documents in this case are located in McAllen, Texas, where Tex-Mex's billing documents are located; Reynosa, Mexico, where credit notes are located; and Rockledge, Florida, where Sapa's billing documents are located. (Doc. 7-1¶ 19; Doc. 13 ¶¶ 22, 24; Doc. 14 ¶¶ 10, 12).

By way of the instant motion, Tex-Mex seeks dismissal of the Complaint for lack of personal jurisdiction or, in the alternative, to have this matter transferred to the Southern District of Texas.

**II.    Legal Standard.**

**A.    Personal Jurisdiction.**

The Court considers two questions in resolving whether personal jurisdiction exists.   "First, [courts consider] whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute."   *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004). "Second, [courts] examine whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Id.*   The Due Process Clause "requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'"   *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

---

[4] All of Sapa's executives and employees work out of its Rockledge, Florida headquarters, with the exception of plant managers and workers at the Mexican processing plants. (Doc. 13 ¶ 22; Doc. 14 ¶ 10).

A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.  *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (per curiam); *see also Polski Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986) (describing procedure for plaintiff to establish personal jurisdiction under Florida's long-arm statute).  When a defendant challenges jurisdiction by submitting affidavits in support of its position, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction."  *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *Posner*, 178 F.3d at 1214; *see also Polski Linie Oceaniczne*, 795 F.2d at 972.  When the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, a court must construe all reasonable inferences in favor of the plaintiff.  *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

**B.     Venue.**

District courts have broad discretion in deciding whether to transfer an action to a more convenient forum pursuant.  *Omega Patents, LLC v. Lear Corp.*, No. 6:07-cv-1422-Orl-35DAB, 2009 U.S. Dist. LEXIS 48916, at *4 (M.D. Fla. May 27, 2009) (citing *England v. ITT Thompson Indus., Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988)).  The governing statutory provision, 28 U.S.C. § 1404(a), provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  The party seeking transfer bears the burden of establishing that this case should be transferred.  *See In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) (per curiam) ("[I]n the usual motion for transfer under § 1404(a), the burden is on the movant to establish that the suggested forum is more convenient.").

The threshold question in deciding a motion to transfer pursuant to § 1404(a) is whether the action could originally have been brought in the proposed transferee court. *See Kelling v. Hartford Life & Accident Ins. Co.*, 961 F. Supp. 2d 1216, 1219 (M.D. Fla. 2013) ("Transfer is inappropriate if the case could not have been filed in the proposed transferee district."). If the action could originally have been brought in the proposed transferee court, the next issue is "'whether a balancing of the convenience of the parties and the interest of justice favors transfer.'" *See Omega Patents, LLC*, 2009 U.S. Dist. LEXIS 48916, at *4 (quoting *First Fin. Bank v. CS Assets, LLC*, No. 08-0731-WS-M, 2009 U.S. Dist. LEXIS 37885, at *5 (S.D. Ala. May 4, 2009)).

**III**.   **Analysis.**

    **A.   Personal Jurisdiction.**

        1.   <u>Long-Arm Statute.</u>

Tex-Mex claims that jurisdiction under Florida's long-arm statute is improper because it lacks sufficient contacts with Florida, the contract was not negotiated in Florida, and there was no injury suffered in Florida. (Doc. 7, at 6-7.) Because Sapa does not contend that Tex-Mex is subject to general jurisdiction, this Court will examine only the issue of specific jurisdiction.

In its response, Sapa asserts four bases for the exercise of specific jurisdiction under the Florida long-arm statute:

> (1)   Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state;
>
> (2)   Committing a tortious act within this state;
>
> . . .
>
> (6) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside of the state; and

>     (7) Breaching a contract in this state by failing to perform acts
>     required by the contract to be performed in this state.

Fla. Stat. § 48.193(1)(a). Upon review, the Court finds that jurisdiction is proper pursuant to the long-arm statute under the last of the above-listed provisions.[5]

Section 48.193(1)(a)(7) confers specific jurisdiction when a defendant breaches a contract "by failing to perform acts required by the contract to be performed in this state." Fla. Stat. § 48.193(1)(a)(7). Failure to pay a contractual debt that is required to be paid in Florida is sufficient to warrant exercise of specific jurisdiction under this provision. *See, e.g.*, *Hartcourt Cos. v. Hogue*, 817 So. 2d 1067, 1070 (Fla. 5th DCA 2002); *Hollywood Collectibles Grp., LLC v. Master Cutlery, Inc.*, No. 6:14-cv-176-Orl-31KRS, 2014 U.S. Dist. LEXIS 70540, at *11 (M.D. Fla. May 22, 2014). In this case, Sapa alleges that the parties entered into an agreement in which Sapa agreed to supply Tex-Mex with scrap in exchange for payment pursuant to an agreed schedule of scrap values. (Doc. 3 ¶ 26.) Sapa alleges that payment was due in Florida, and that Tex-Mex breached the agreement by failing to pay. That breach is the basis of Sapa's breach of contract claim. (*Id.* ¶ 27.)

Tex-Mex has not produced any evidence that calls into question the existence of a contract, but Mr. Hettinger has averred that payment was not due in Florida. (Doc. 7-1 ¶ 12; Doc. 21-1 ¶ 19). This evidence, however, is controverted by the declarations of Sapa executives Sebbar and Cordes, who both state that payment for the scrap was due in Florida. (Doc. 13 ¶ 13; Doc. 14 ¶ 5). Faced with conflicting evidence, this Court must construe all reasonable inferences in favor of Sapa. *See Madara*, 916 F.2d at 1514. Therefore, this Court concludes, for purposes of the jurisdictional issue, that Tex-Mex had a contractual obligation to make payment to Sapa in Florida.[6]

---

[5] Because personal jurisdiction is proper under FLA. STAT. § 48.193 (1)(a)(7), this Court will not address sections 48.193(1)(a)(1), (2), and (6).

[6] The mere presence of the address on the invoices saying that payment was to be made at the

Moreover, even if no discussion of the place of payment had occurred, the "legal presumption that a debt is to be paid at the creditor's place of business 'is sufficient to satisfy the language of Florida's long-arm provision that refers to contractual acts 'required' to be performed in Florida.'" *Unger v. Publisher Entry Serv., Inc.*, 513 So.2d 674, 676 (Fla. 5th DCA 1987) (quoting *Kane v. Am. Bank of Merritt Island*, 449 So.2d 974 (Fla. 5th DCA 1984)); s*ee also Hartcourt Cos.*, 817 So.2d at 1070.

Accordingly, the exercise of specific jurisdiction is proper under section 48.193(1)(a)(7).[7] *Cf. Links Design, Inc. v. Lahr*, 731 F. Supp. 1535, 1539 (M.D. Fla. 1990) ("Allegations that Defendant failed to make payments, per the contract, in Florida is sufficient to bring this action within the ambit of [Florida's long arm statute].").

2. Due Process.

Having determined that specific jurisdiction is appropriate under Florida's long arm statute, the Court must next consider whether the exercise of specific jurisdiction comports with due process. "The exercise of personal jurisdiction comports with due process when '(1) the non-resident defendant has purposely established minimum contacts with the forum . . . and (2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice.'" *United States SEC v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997) (quoting *Francosteel Corp. v. M/V Charm*,

---

Philadelphia office does not supersede an oral agreement that payment was due in Florida.

[7] Although personal jurisdiction under Florida's long-arm statute arises from the breach of contract claim, all of Sapa's claims arise from the same jurisdiction-generating event (i.e., the failure to make payments for scrap). Therefore, Florida's long-arm statute authorizes personal jurisdiction over the entire case – not just Sapa's breach of contract claim. *Cf. Cronin v. Washington Nat'l Ins. Co.*, 980 F.2d 663, 671 (11th Cir. 1993) (finding that because all of the claims arose from the same jurisdiction generating event, the district court had personal jurisdiction under Florida's long-arm statute over the entire case).

19 F.3d 624, 627 (11th Cir. 1994)).  For the reasons set forth below, the exercise of personal jurisdiction comports with due process.

### i. *Minimum Contacts.*

Tex-Mex argues that it lacks sufficient minimum contacts with Florida to satisfy the constitutional requirements.  When analyzing a commercial relationship for minimum contacts, a court must recognize that merely entering into a contract with a citizen of another state, standing alone, does not create sufficient minimum contacts to justify the exercise of personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985).  Nor do the unilateral acts of a forum resident.  *Id.*  A court must instead focus on the substance of the transaction including (1) prior negotiations, (2) contemplated future consequences, (3) the terms of the contract, and (4) the actual course of dealing.  *Id.* at 479; *see also Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1268 (11th Cir. 2010).  Jurisdiction is often found where further "plus factors" connect the defendant to the jurisdiction.  *Diamond Crystal Brands, Inc.*, 593 F.3d at 1268; *see also, e.g.*, *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 931-33 (11th Cir. 2007). These "plus factors" may include, for example,

> a defendant's initiating the contractual relationship, visiting the plaintiff's factory to assess or improve quality, sending materials to the plaintiff for inspection or use in shipping, participating in the manufacturing process, establishing a relationship by placing multiple orders, requiring performance in the forum, negotiating the contract via telefaxes or calls with the plaintiff; the list goes on.

*Diamond Crystal Brands, Inc.*, 593 F.3d at 1268-69 (footnotes omitted).  As the Eleventh Circuit noted, these "plus factors" are not talismans.  Rather, they are intended to "indicate that the defendant 'deliberate[ly] affiliat[ed]' with the forum and thus should reasonably anticipate defending suit there."  *Id.* (quoting *Burger King Corp.*, 471 U.S. at 482) (alterations in the original).

Tex-Mex characterizes its contact with Florida as "minimal" and "unrelated to the matter at hand." (Doc. 7, at 8-9). To that end, Tex-Mex argues that negotiation of the agreement is the only relevant contact with the state. (*Id.* at 9). However, there is evidence that Tex-Mex's contacts with the forum were more pervasive than negotiation of the agreement. For example, Sapa executives stated that Mr. Hettinger traveled to Florida and met with them on numerous occasions.[8] Moreover, Sapa executives stated that Tex-Mex sent purchase orders to Sapa's Florida office, orally agreed to send payment to Sapa's Florida office, and sent telephonic, electronic, and written representations promising payment to Sapa's Florida office. (Doc. 12, at 3; Doc. 12-2, at 3). These contacts are related to the cause of action. Due to the fact that these contacts occurred over a four- to five-year period, they are substantial and continuing, rather than fortuitous or attenuated.[9] *See Burger King Corp.*, 471 U.S. at 475. Additionally, several of the aforementioned contacts with the forum constitute the "plus factors" that suggest Tex-Mex should reasonably have anticipated defending suit in Florida. *Diamond Crystal Brands, Inc.*, 593 F.3d at 1268-69. The contacts are sufficient to show that Tex-Mex purposefully directed actions toward the forum state and could have

---

[8] Sapa executives Sebbar and Cordes list four face-to-face meetings in which Mr. Hettinger came to Florida to discuss the outstanding debt owed. Those meetings took place on May 3, 2013, July 19, 2013, September 11, 2013, and October 11, 2013. (Doc. 12-1 at 5; Doc. 12-2 at 3). While Mr. Hettinger does not dispute that the meetings occurred, he does dispute the purpose of his travel to Florida. Mr. Hettinger says his travel to the state was primarily for vacation and to attend trade shows, not for the meetings. (Doc. 21-1 at 2-3). Nevertheless, Mr. Hettinger did travel to Florida and he did attend meetings related to the matters in dispute.

[9] Mere isolated, fortuitous acts do not satisfy the minimum contacts requirements. *Cf. L.O.T.I. Group Productions v. Lund*, 907 F. Supp 1528, 1534 (S.D. Fla. 1995) (holding that mere delivery of product in Florida from two out-of-state sales is too fortuitous a contact to satisfy minimum contacts requirement); *Global Servicios, S.A. v. Toplis & Harding, Inc.*, 561 So.2d 674, 675 (Fla. 3rd DCA 1990) (holding that when the only contact with Florida is the use of Miami as a port of entry, the contact is too fortuitous to satisfy minimum contacts); *Scordilis v. Dobnicki*, 443 So.2d 411, 413-14 (Fla. 4th DCA 1984) (holding that mother-in-law's selection of Florida as her eventual place of residence is too fortuitous a circumstance to satisfy minimum contacts).

reasonably have anticipated being haled into court in this forum.[10]  *Burger King Corp.*, 471 U.S. at 476-78.

Although the factors in *Burger King* combined with the "plus factors" listed in *Diamond Crystal Brands* are important for a court to consider, due process is not a mechanical test; rather, a court should use a "highly realistic approach."  *Burger King Corp.*, 471 U.S. at 478; *Diamond Crystal Brands, Inc.*, 593 F.3d at 1268–69.  Bearing that in mind, this was a commercial transaction with different moving pieces in many different places.  As detailed above, Tex-Mex repeatedly made contacts with the forum state that are directly related to this litigation.  On these facts, the Court concludes that Tex-Mex has sufficient minimum contacts with Florida.  Tex-Mex purposefully directed activities toward Sapa in Florida, and thus should have reasonably anticipated defending suit in Florida.[11]  *Burger King Corp.*, 471 U.S. at 476-78; *Diamond Crystal Brands*, 593 F.3d at 1249, 1267.

### ii.   Fair Play and Substantial Justice.

In addition, the exercise of jurisdiction over a non-resident defendant must comport with traditional notions of fair play and substantial justice.  *Burger King Corp.*, 471 U.S. at 476.   In this

---

[10] Generally, solely owing a debt in the forum state is not enough to satisfy minimum contacts. Additional acts like those in the present case, such as in-person meetings, telephonic conversations, etc., must occur to show purposeful availment.  *Compare Navas v. Brand*, 130 So.3d 766, 771 (Fla. 3rd DCA 2014) ("The contact requirement can be met by telephonic contact, email or written communications alone."), *with Venetian Salami*, 554 So.2d at 503, *and Cornerstone Inv. Funding, LLC v. Painted Post Group, Inc.*, 188 So. 3d 904, 906 (Fla. 4th DCA 2016) (holding that acts beyond mere repayment must be present to show purposeful availment).

[11] *See also Rabin v. Felt Home Care, Inc.*, 834 So.2d 349, 349-50 (Fla. 4th DCA 2003) (holding that activities including coming to Florida, making payment in Florida, and agreeing to make future payment in Florida were such that a person could reasonably anticipate defending suit in Florida); *Gencor Indus., Inc. v. Fort Myer Constr. Corp.*, No. 6:11-cv-1730-Orl-31DAB, 2012 U.S. Dist. LEXIS 22668, at *14 (M.D. Fla. Feb. 23, 2012) (finding defendant should have anticipated defending suit in Florida when the defendant: (1) initiated the contractual relationship (albeit, outside of Florida); (2) entered into twenty different contracts for additional equipment; (3) negotiated the contract – at least in part – via phone with the plaintiff in Orlando; and (4) had two employees and its vice president visit the plaintiff's Orlando facility).

analysis, a court looks to (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.* at 477 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 292).

Tex-Mex does not give this issue more than a passing mention in its motion. Regardless, the Court finds that no constitutional unfairness would exist if this case were to be litigated in Florida. *See Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 114 (1987) ("When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant."); *Diamond Crystal Brands, Inc.*, 593 F.3d at 1274 (finding forum has a "manifest interest in providing an effective means of redress" when a non-resident breaches a contract with a local business by failing to make payments required to made in the forum).

### B.     Motion to Transfer Venue

Tex-Mex argues that the Southern District of Texas is the most convenient forum and that the case should be litigated there. Whether a transfer is appropriate depends on two inquiries: (1) whether the action might have been brought in the proposed transferee court and (2) whether various factors are satisfied so as to determine that a transfer to a more convenient forum is justified. *First Credit Card Corp. v. Global Electronic Technology, Inc.*, No. 6:08-cv-1974-orl-31GJK, 2009 WL 482242, at * 1 (M.D. Fla. Feb. 25, 2009) (citation omitted). Here, the first prong of the inquiry is easily satisfied because Tex-Mex's principal place of business is in the Southern District of Texas. *See* 28 U.S.C. § 1391(b)(1). Under the second prong of the test, when considering whether a transfer is appropriate, courts traditionally consider such factors as (1) the convenience of the

witnesses; (2) the location of the relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Kelling*, 961 F. Supp. 2d at 1218 (quoting *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)).

Tex-Mex contends that many of these factors support transfer.[12] However, a defendant bears a heavy burden when seeking to disrupt a plaintiff's chosen venue. *See Eye Care Int'l, Inc. v. Underhill*, 119 F. Supp. 2d 1313, 1317-19 (M.D. Fla. 2000); *Mason v. Smithkline Beecham Clinical Labs*, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001). After balancing the convenience of the parties and witnesses and the interest of justice, the Court finds that transfer is not warranted.

1. Plaintiff's Choice of Forum.

When deciding a motion to transfer under Section 1404, the Court employs a "strong presumption against disturbing plaintiff's initial forum choice." *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1100 (11th Cir. 2004) (quoting *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983)). "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (quoting *Howell v. Tanner*, 650 F.2d 610, 616 (5th

---

[12] In its motion, Tex-Mex cites several cases concerning the doctrine of *forum non conveniens*, which "has continuing application only in cases where the alternative forum is abroad." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994). Nevertheless, many of the factors relevant to whether a case should be dismissed under the doctrine of *forum non conveniens* are also relevant to whether the case should be transferred pursuant to § 1404(a). Therefore, the Court will consider Tex-Mex's arguments to the extent that they are relevant to the § 1404(a) analysis.

Cir. Unit B 1981)) (internal quotation marks omitted).  Here, Sapa chose to litigate this case in Florida.  Therefore, this factor weighs heavily against transfer.

        2.        <u>Convenience of the Parties</u>.

"Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient."  *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964).  "Where a transfer merely shifts the inconvenience from one party to another, Plaintiff's choice of forum should remain."  *Eye Care Int'l, Inc. v. Underhill*, 119 F. Supp. 2d 1313, 1319 (M.D. Fla. 2000).  "The Court places little weight on the domicile of corporate defendants and their place of incorporation," *Am. Safety Cas. Ins. Co. v. Bio-Tech Solutions, Inc.*, No. 1:05-1cv-3152-JEC, 2007 WL 951529, at *4 (N.D. Ga. Mar. 26, 2007) (quoting *Grey v. Cont'l Mktg. Assocs, Inc.*, 315 F. Supp. 826, 831–32 (N.D. Ga. 1970), or on an "alleged hardship [that is] unsupported by way of proof or affidavit," *Grey*, 315 F. Supp. at 831.

Tex-Mex claims that litigating in Florida would be an extreme inconvenience to the parties.  However, Tex-Mex never shows how litigating in Florida would inconvenience the parties.  Merely reciting this element is not enough to show an inconvenience.  Tex-Mex has its principal office in Texas and Sapa has its principal office in Florida.  One side will necessarily be inconvenienced by having to litigate this case outside its home forum.  Transfer to the Southern District of Texas merely shifts the inconvenience from Tex-Mex to Sapa; it does not eliminate the inconvenience.  Under these circumstances, Tex-Mex has not demonstrated that the convenience of the parties is a factor that supports transfer.  Therefore, this factor weighs against transfer.

        3.        <u>Convenience of the Witnesses and Availability of Process to Compel the Attendance of Unwilling Witnesses</u>.

"The most important factor under § 1404(a) is the convenience of witnesses, and the moving party must make a specific showing of inconvenience to witnesses."  *Elec. Transaction Network v.*

*Katz*, 734 F. Supp. 492, 501-02 (N.D. Ga. 1989). "[A] general allegation that witnesses will be necessary, without identifying those necessary witnesses and indicating what their testimony at trial will be," does not warrant transfer under § 1404(a). *J.I. Kislak Mortg. Corp. v. Conn. Bank & Trust Co.*, 604 F. Supp. 346, 347 (S.D. Fla. 1985). In this respect, "a party seeking a transfer must demonstrate that the witnesses identified are key witnesses." *Homes v. Freightliner, LLC*, 237 F. Supp. 2d 690, 694 (M.D. Fla. 2002). Furthermore, "when considering this factor, it is not so much the convenience of the witnesses but the possibility of having their testimony at the trial that is important. Thus, transfer may be denied when the witnesses, although in another district, are employees of a party and their presence can be obtained by that party." *Mason*, 146 F. Supp. 2d at 1361.

Tex-Mex claims that litigating in Florida would be an inconvenience to the witnesses. However, it has failed to show how litigating this matter in Florida would inconvenience the witnesses. Merely mentioning the geographic locations and numbers of the witnesses is not enough to show an inconvenience of the sort that would warrant transfer.[13] Therefore, this factor does not favor transfer. *Cf. Mason*, 146 F. Supp. 2d at 1362 ("The party seeking the transfer must support its motion by clearly specifying the key witnesses to be called and particularly stating the significance of their testimony.").

        4. <u>Location of the Relevant Documents and the Relative Ease of Access to Sources of Proof</u>.

Tex-Mex represents that this factor favors transfer because its billing records and information, invoices, and photographs are located in McAllen, Texas. (Doc. 7, at 19; Doc. 7-

---

[13] *See Owen v. United States*, 846 F. Supp. 2d 1256, 1257 (M.D. Fla. 2012) ("The court will not simply tally the number of witnesses in each prospective forum to decide which is more convenient.") (citations omitted)).

1¶ 19).[14]  Sapa responds that its documents are located at its facility in Florida.   It also asserts that the location of documents is not a particularly relevant factor because "documents can be easily photocopied, electronically copied, and transported from their place of storage to the litigation location."  (Doc. 12, at 14).  Sapa is correct; "[m]odern technology largely neutralizes traditional obstacles to providing relevant documents and access to proof," thereby reducing the significance of this factor.  *Watson v. Cmty. Educ. Ctrs., Inc.*, No. 2:10-cv-00778-36SPC, 2011 U.S. Dist. LEXIS 89520, at *13 (M.D. Fla. Aug. 11, 2011) (citing *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 716 F. Supp. 2d 1322, 1327-28 (M.D. Fla. 2010)).   Under these circumstances, this factor is neutral.

### 5.   Locus of Operative Facts.

Tex-Mex contends that a significant portion of the events giving rise to this action occurred in Texas, because that is where its communications to Sapa originated and that is where its principal office is located.  (Doc. 7, at 16).  However, there is also evidence that relevant communications originated to and from Florida, and Sapa's principal office is located in Florida.  Therefore, at best this factor is neutral.

### 6.   Relative Means of the Parties, Forum's Familiarity with the Governing Law, and Trial Efficiency and the Interests of Justice, Based on the Totality of the Circumstances.

Neither party contends that any of the remaining factors weigh for or against transfer.   Thus, it appears that the relative means of the parties; the forum's familiarity with the governing law;[15]

---

[14] Tex-Mex also asserts that equipment stored in its Reynosa, Mexico location is extremely relevant to this litigation.   While it might be easier to transport this equipment to the Southern District of Texas, than to the Middle District of Florida, Tex-Mex has not established why it is necessary to have this equipment at trial.   Therefore, the location of this equipment has no bearing on this analysis.

[15] A federal court sitting in diversity is fully capable of interpreting the law of another state.  *Sterling v. Provident Life & Accident Ins. Co.*, 519 F. Supp. 2d 1195, 1208 (M.D. Fla. 2007).

and trial efficiency and the interest of justice, based on the totality of the circumstances, are neutral factors.

In sum, Tex-Mex bears the burden of persuading the Court that a transfer to the Southern District of Texas is warranted.   As explained above, none of the factors relevant to the transfer analysis weigh in favor of transfer and some weigh against transfer.   Accordingly, Tex-Mex has not met its burden of establishing that transfer is appropriate.

## IV. Conclusion

For the foregoing reasons, it is

**ORDERED** that the Defendant's Motion to Dismiss or Transfer Venue (Doc. 7) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on July 20, 2016.

```
_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE
```

Copies furnished to:

Counsel of Record
Unrepresented Party